**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| MATT COOK AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID SLAGLE III. ) ) ) ) PLAINTIFF. ) ) v. ) ) BLUELINX CORPORATION ) ) DEFENDANT. ) ) _____ ) | CIVIL ACTION NO.: 9:19-cv-01050-DCN<br><br>**DEFENDANT BLUELINX CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM** |

Defendant BlueLinx Corporation ("BlueLinx") submits this Motion for Summary Judgment and Supporting Memorandum, pursuant to Rule 56 of the Federal Rules of Civil Procedure. BlueLinx's Motion should be granted because Plaintiff is pursuing product liability claims, but the allegations do not concern a "product" under South Carolina law. This case involves a shipment of plywood, and discovery has revealed that the shipping container that contained plywood imported by BlueLinx was only a means of transporting the plywood. It was not sold with the plywood and, therefore, the shipping container and plywood were not an "integrated whole" product, as is required to pursue a product liability case under South Carolina law.

David Slagle, III died while unloading bales of plywood from a metal shipping container that had been used to transport plywood from Russia. The shipping container was owned by a shipping company and, once unloaded, was returned to that company, while the plywood remained at a warehouse until it was transported by truck, in separate shipments, to two different states. Therefore, this case does not involve a "product" under South Carolina law.

Accordingly, BlueLinx is entitled to summary judgment.

**SUMMARY OF RELEVANT UNDISPUTED FACTS**

This case arises from a March 6, 2016 workplace accident where Plaintiff's decedent, David Slagle, III, unfortunately sustained fatal injuries when a bale of plywood fell on him while he was helping unload it from a steel shipping container. The shipment of plywood had been transported to Charleston, South Carolina from St. Petersburg, Russia by Maersk Line ("Maersk"), a shipping company that provided the container used to transport the plywood, pursuant to a purchase order between BlueLinx and the plywood seller, Phoenix International Group. *See* Exhibit A, Maersk Line Waybill; Exhibit B, Importer Security Filing; Exhibit C, Invoice dated February 9, 2016; Exhibit D, Plant and Plant Product Declaration Form; Exhibit E, Maersk Line Arrival Notice; and Exhibit F, Depart. of Homeland Security Entry Summary.

Maersk transported the plywood in Maersk-owned steel shipping containers identified by container numbers MRKU2569108, MRKU2068750, and MSKU0873031 to the Port of Charleston. *See Id.* From there, the containers were transported by truck to a warehouse in Charleston owned by Mr. Slagle's employer, Blackmon Warehouse Systems, Inc. ("Blackmon"), where they were to be unloaded and the plywood held on behalf of BlueLinx until such time as BlueLinx requested plywood be shipped to its customers. *See* Exhibit G, BlueLinx Delivery Order dated February 25, 2016; Exhibit H, Blackmon's Shipping and Receiving Forms; Exhibit I, BlueLinx's Interrogatory Responses, at Response to Interrogatory 12.

The accident at Blackmon, while Mr. Slagle was helping to unload plywood from container MRKU2569108. *See* Exhibit J, OSHA File at BlueLinx_Slagle_00049-50. As

a result of the accident, that Maersk container was held at Blackmon in order to allow the South Carolina Occupational Safety and Health Administration ("OSHA") time to investigate. *See Id.* Blackmon's owner, Vicky Slagle, who is also the decedent's mother, asked for OSHA's permission to finish unloading and then to return the container to the Maersk ship after OSHA completed its investigation. *Id.*

OSHA granted this permission, and the container was returned by truck to the Maersk ship in the Port of Charleston on March 10, 2016, four days after the accident. *See* Exhibit K, Maersk Container History, at Line 396. The day after that, Blackmon shipped a portion of the plywood that had been in that Maersk container by truck to a BlueLinx customer in Trinity, North Carolina. Exhibit H. Almost two weeks later, Blackmon shipped, again by truck, the remainder of the plywood to another BlueLinx customer in Georgia. *Id.*

Maersk had used this container to transport goods on behalf of its various customers for several years before it was used to transport the plywood at issue in this case, and it has continued to use the container since it was returned by Blackmon. Exhibit K.

**PLAINTIFF'S CLAIMS AND RELEVANT PROCEDURAL HISTORY**

Plaintiff has alleged design, manufacture, and warning defects under the three product liability causes of action: strict liability, negligence,[1] and breach of implied

---

[1] As the Court noted in its June 12, 2019 Order in this matter, it was initially unclear whether Plaintiff's negligence claim in its original Complaint sounded in products liability or traditional negligence. Pursuant to the Court's recommendation, on June 28, 2019 Plaintiff filed an Amended Complaint that clarified the basis for his negligence claim. *See* Pl.'s Am. Compl. (ECF 15) Based on Plaintiff's assertions in his Amended Complaint that BlueLinx "was negligent and reckless in failing to *design, manufacture, and install* adequate crush protection, connection to the walls or top of the container, warnings or

3

warranty. See Pl.'s Compl., ¶¶ 1-31. The product Plaintiff has alleged as unreasonably dangerous is "a steel shipping box of plywood, bound with metal bands." See Pl.'s Am. Compl. ¶ 11. Plaintiff contends that the shipping container and the plywood inside collectively formed a "product" because the combination was sold as "one unit," as described in comment *h* of the Restatement (Second) of Torts, section 402A, which provides in relevant part:

> No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole . . . . The container cannot logically be separated from the contents when the two are sold as a unit[.]

See Pl.'s Am. Compl. ¶¶ 7, 12 (quoting Restatement (Second) of Torts § 402A).[2]

BlueLinx moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6), arguing that the shipping container and plywood were not an integrated whole, and therefore not a "product," under South Carolina law. The Court agreed with this legal reasoning but denied the motion on the grounds that the question of whether the container and its plywood contents were an integrated product could not be determined on the pleadings. As the Court explained:

> If the container was just a container that was used to ship the plywood and was subsequently returned to BlueLinx or discarded, then the container and the plywood were not sold as a unit and clearly cannot be considered together as a 'product.' However, if [Plaintiff's decedent's employer] purchased, as an integrated unit, the container and the plywood, then the unit is a product.

---

other appropriate safety measures, and negligent in failing to warn or instruct" related to the inside of the shipping container, Plaintiff clarified that he had indeed intended to assert negligent product liability. *Id.* (emphasis added).

[2] The South Carolina General Assembly adopted the comments to § 402A as its legislative intent. S.C. Code Ann. § 15-73-30.

4

*See* Order, June 12, 2019 (ECF 14), at p. 4; *see also* p. 7.

The Court further explained, "To be sure, if discovery reveals that the container in which the plywood bales were shipped was simply meant for transporting the plywood and not part of the unit that was sold to Blackmon, then the container and plywood are clearly not 'integrated as a whole.'" *Id.* at p. 7. With specific reference to this language from the Order, the Parties submitted a joint Rule 26(f) Discovery Plan and proposed Consent Scheduling Order that divided discovery into phases, with the first phase focused on clarifying whether the container was simply used to transport the plywood from Russia. *See* ECF 19 at I(B), pp. 2-3 and ECF 18. The Court entered this proposed Consent Scheduling Order on September 11, 2019. ECF 20.

The first phase of discovery has now closed, and the evidence conclusively establishes that the shipping container and the plywood contained therein were not an integrated whole because the shipping container was merely a means of transporting the plywood from overseas. Therefore, BlueLinx is entitled to summary judgement on all of Plaintiff's claims.

## **LEGAL STANDARD**

**(A)  Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under such circumstances, the rule is not discretionary but instead "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[I]n evaluating a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party." *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir 1990).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Stokes v. Virginia Dept. of Corrections*, 512 Fed. Appx. 281, 282 (4th Cir. 2013).  To withstand a motion for summary judgment, the non-moving party has the burden of demonstrating a genuine issue of material fact; "[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of the [non-moving party's] case." *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal citations omitted).

**(B) Product Liability Under South Carolina Law**

There are three product liability causes of action in South Carolina: (1) strict liability; (2) negligence; and (3) breach of warranty.  *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 538, 462 S.E.2d 321, 325 (S.C. Ct. App. 1995).  Among other claim-specific elements, there are three common elements that a plaintiff must prove to establish liability under each cause of action: "(1) he was injured by the product; (2) the product was in essentially the same condition at the time of the accident as when it left the hands of the defendant; and (3) the injury occurred because the product 'was in a defective condition unreasonably dangerous to the user.'"  *Graves v. CAS Medical Systems, Inc.*, 401 S.C. 63, 79, 735 S.E.2d 650, 658 (2012) (quoting *Madden v. Cox*, 284 S.C. 574, 579, 328 S.E.2d 108, 112 (Ct. App. 1985)).  Requisite to these showings, a plaintiff must identify a

product that she asserts caused the harm at issue. The absence of a product is fatal to a products liability claim.

## **ARGUMENT**

Plaintiff's claims turn on the foundational question of whether the Maersk-owned shipping container and the plywood it carried is a product as defined by law. For this combination to be considered a product under the law, Plaintiff would need to show the plywood and shipping container were meant to be sold or purchased collectively, as part of "one unit" or an "integrated whole," rather than the shipping container being merely a means of transport of the plywood within. *See* Order, June 12, 2019, at 4 (ECF 14). However, the evidence conclusively establishes that they were not such an integrated whole.

Instead, all evidence shows that the shipping container was simply a means of transport, and was meant to be, and in fact was, returned to Maersk after the delivery was completed. Likewise, it shows Maersk went on to use the container to transport other things on behalf of its other customers, and it shows that after the container was returned, the plywood was transported by truck from Blackmon to two different BlueLinx customers. Plaintiff has failed to identify an actionable product in this action, and so BlueLinx is entitled to summary judgment.

In addition to the objective history of the shipping container, which is dispositive, the evidence also shows that all parties involved in the sale and delivery of the plywood subjectively understood that the shipping container had to be cleaned and returned to Maersk after its cargo was unloaded. In the OSHA investigation file of the incident giving

rise to this lawsuit, the Compliance Officer's noted the following interaction with Plaintiff's decedent's employer on March 7, 2016:

> Mrs. Slagle asked CO [Compliance Officer] if he could return the trailer [shipping container] back over to the company so they could hire someone to come in and clean the area so the rest of the bundles [of plywood] could be unloaded and the trailer could be sent back to the docks to be loaded back in the container ship.

*See* Exhibit J, OSHA File at BlueLinx_Slagle_00050. It is undisputable, then, that Blackmon, tasked with unloading the shipment of plywood, understood that the shipping container was *not* part of the sale of the product, and that it needed to be cleaned and returned to Maersk.

Finally, the container itself included instructions to the effect that the container was to be cleaned and returned to Maersk once its cargo was unloaded. A label affixed to the inside of the shipping container provides the following language:

**ATTENTION!**

> THE SHIPPER MUST CHECK THE SUITABILITY AND CONDITION OF THIS CONTAINER BEFORE PACKING. PACKING OF THIS CONTAINER AMOUNTS TO SHIPPER'S ACCEPTANCE OF ITS SUITABILITY FOR HIS CARGO.
>
> <u>THE CONSIGNEE MUST</u> REMOVE ALL DEBRIS, PACKING AND LASHING MATERIAL, ALL CARGO RELATED LABELS AND <u>RETURN THIS CONTAINER IN A CLEAN AND ODOURLESS CONDITION</u>
>
> FAILURE TO COMPLY MAY RESULT IN:
>
> -LIABILITY FOR CARGO DAMAGE BEING DENIED
> -CARRIER CLAIMING RECOVERY OF ALL COSTS AND EXPENSES AND RETAINS RIGHT TO PURSUE FOR OTHER CONSEQUENCES
>
> IN CASE OF DOUBT PLEASE CONTACT YOUR SAFMARINE OR MAERSK REPRESENTATIVE.

8

*See* Exhibit L, OSHA File Photo (emphases added).

Pursuant to the Maersk "waybill" for the shipments at issue, the "shipper" in this case was the plywood manufacturer, LTD Ufimsky Plywood Mill; the "consignee" was BlueLinx; and the "carrier" was Maersk. Exhibit A. This label is in accord with Mrs. Slagle's statement recorded in the OSHA file: BlueLinx or their agent was instructed to clean and return the shipping container to Maersk once the cargo inside was unloaded.

In sum, the evidence shows that the container and the plywood were not an "integrated whole."

## **CONCLUSION**

The evidence in this case establishes that the plywood was shipped from Russia to Blackmon in a container that belonged to Maersk. It further shows that after the plywood was unloaded, the container was returned to Maersk and the plywood was shipped by truck to BlueLinx's customers in two different states. As such, the container and plywood were not an "integrated whole." Therefore, they were not a product under South Carolina law.

Accordingly, BlueLinx is entitled to summary judgment.

*SIGNATURE PAGE TO FOLLOW*

BOWMAN AND BROOKE LLP

s/ Angela G. Strickland_____
Angela G. Strickland
Federal Bar No.: 9824
E: angela.strickland@bowmanandbrooke.com
Kevin J. Malloy
Federal Bar No.: 11419
E: kevinmalloy@bowmanandbrooke.com
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel: (803) 726-7420
Fax: (803) 726-7421

**Counsel for Defendant BlueLinx Corporation**

April 17, 2020
Columbia, South Carolina