IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| MATT COOK, as personal representative of the estate of David Slagle, III, | ) ) ) | |
| Plaintiff, | ) ) | No. 9:19-cv-01050-DCN |
| vs. | ) ) | **ORDER** |
| BLUELINX CORPORATION, | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on defendant BlueLinx Corporation's ("BlueLinx") motion for summary judgment, ECF No. 23. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

This case arises from an incident that resulted in the death of David Slagle, III ("Slagle"). Slagle worked for Blackmon Warehouse Systems, Inc. ("Blackmon"). On March 6, 2016, Slagle was at work and helping unload bales of plywood from a steel shipping container when a bale fell on him and caused fatal injuries. Blackmon owned the warehouse where the plywood was being held on behalf of BlueLinx. The plywood had been shipped from St. Petersburg, Russia by a shipping company called Maersk Line ("Maersk"). ECF No. 23-5. Maersk facilitated the plywood shipment pursuant to a purchase order between BlueLinx and the plywood seller, Phoenix International Group. ECF No. 23-2. Maersk transported the plywood in Maersk-owned shipping containers identified by container numbers MRKU2569108, MRKU2068750, and MSKU0873031. ECF No. 23-1. Slagle was unloading plywood from MRKU2569108 when he sustained

1

his injuries. ECF No. 23-10 at 22. After the accident, the MRKU2569108 container was held at Blackmon for an investigation by the South Carolina Occupational Safety and Health Administration ("SC OSHA"). The rest of the plywood in the container was subsequently unloaded, the container was sent back to Maersk, and the plywood was sent to BlueLinx's customers. ECF No. 23-11 at 5; ECF No. 23-8.

Matt Cook ("Cook"), the personal representative for the estate of Slagle, filed this action in state court on March 6, 2019, and BlueLinx removed the action on April 10, 2019. BlueLinx then filed a motion to dismiss arguing that Cook's complaint must be dismissed because his causes of action were based on theories of products liability, and the shipping container and plywood were not a "product" under South Carolina law. ECF No. 5. The court denied the motion because it could not determine from the complaint whether the shipping container and plywood could be considered together as a product. ECF No. 14. The court also instructed Cook to file an amended complaint to clarify if his negligence cause of action was a products liability claim based on a negligence theory or an ordinary negligence claim.

Cook filed an amended complaint with claims for strict liability, negligence, and breach of implied warranty. ECF No. 15. On April 17, 2020, BlueLinx filed a motion for summary judgment. ECF No. 23. Cook responded on May 1, 2020, ECF No. 24, and BlueLinx replied on May 8, 2020, ECF No. 25. The motion is ripe for review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

The court first addresses Cook's now-clarified negligence claim. As explained above, the court was previously unable to determine whether Cook's negligence claim was based on products liability or whether it was an ordinary negligence claim. Pursuant to the court's instruction to clarify the cause of action, Cook amended his complaint and now alleges that BlueLinx "was negligent and reckless in failing to design, manufacture, and install adequate crush protection, connection to the walls or top of the container, warnings, or other appropriate safety measures, and negligent for failing to warn or instruct those who would be charged with unloading the container." Am. Compl. ¶ 6. In other words, Cook alleges that BlueLinx negligently failed to design and install safety precautions within the shipping container and negligently failed to provide instructions

on how to unload the container. These allegations clearly fit within products liability claims based on negligent design and failure to warn. See 5 Star, Inc. v. Ford Motor Co., 759 S.E.2d 139, 141 (S.C. 2014) ("In a products liability action based on a negligent design theory, the plaintiff must establish, among other things, that the defendant failed to exercise due care in designing the product."); Livingston v. Noland Corp., 362 S.E.2d 16, 18 (S.C. 1987) ("A supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous."). Therefore, all three of Cook's claims—strict liability, negligence, and breach of implied warranty—sound in products liability.

As the court previously explained, Cook does not allege that the plywood itself was dangerous nor does he allege that the container was dangerous. Instead, he alleges that the plywood and container together are the product that is the subject of his products liability claims. Am. Compl. ¶ 7. BlueLinx argues that summary judgment is warranted because discovery has shown that the shipping container and plywood were not an integrated whole, meaning that they together are not a product and cannot serve as the basis for Cook's claims. As the court explained in its order on the motion to dismiss, the South Carolina General Assembly has not defined the word "product" in the products liability statute, but it did explicitly incorporate the comments to § 402A of the Restatement (Second) of Torts into the legislative intent of the statute. S.C. Code Ann. § 15-73-30. Comment h, the comment on which the parties rely, provides guidance on

how an item and its container together may give rise to liability based on a defective product. It states that:

> The defective condition may arise not only from harmful ingredients, not characteristic of the product itself either as to presence or quantity, but also from foreign objects contained in the product, from decay or deterioration before sale, or from the way in which the product is prepared or packed. <u>No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole</u>. Where the container is itself dangerous, the product is sold in a defective condition. Thus a carbonated beverage in a bottle which is so weak, or cracked, or jagged at the edges, or bottled under such excessive pressure that it may explode or otherwise cause harm to the person who handles it, is in a defective and dangerous condition. <u>The container cannot logically be separated from the contents when the two are sold as a unit</u>, and the liability stated in this Section arises not only when the consumer drinks the beverage and is poisoned by it, but also when he is injured by the bottle while he is handling it preparatory to consumption.

Comment h to Restatement (Second) of Torts § 402A (emphasis added). BlueLinx argues that the shipping container and plywood are clearly not "an integrated whole" because the evidence shows that the shipping container was simply a means of transport and subsequently returned to Maersk, while the plywood was sent to two different BlueLinx customers. Moreover, BlueLinx points to a label affixed to the shipping container, which requires BlueLinx to return the container, as further evidence that the plywood and container are not an "integrated whole" that were sold together. ECF No. 23-12. Finally, BlueLinx cites to a portion of the SC OSHA file that contains a note reflecting that Mrs. Slagle, the owner of Blackmon, asked the Compliance Officer "if he could turn the trailer back over to the company so they could hire someone to come in and clean the area so the rest of the bundles could be unloaded and the trailer could be sent back to the docks to be loaded back in the container ship." ECF No. 23-10 at 23.

Based on this evidence, BlueLinx argues that it is undisputed that the shipping container was not part of the sale of plywood and needed to be returned to Maersk.

In response, Cook cites to law about leases and then argues that BlueLinx owned the property right to possess both the plywood at the container at the time of Slagle's death. Cook contends that "[t]he entire package was introduced into the stream of commerce by [BlueLinx] and reached Mr. Slagle in the same condition as when [BlueLinx] caused or arranged, [sic] for it to leave Russia." ECF No. 24 at 3. Cook also notes that it is unclear whether BlueLinx's motion addresses his negligence claim, but that a negligence claim can survive the dismissal of a strict liability cause of action, citing to Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321 (S.C. Ct. App. 1995).

Both the evidence and the parties' arguments convince the court that there is no genuine issue of material fact as to whether the plywood and shipping container together are a product. The plywood and shipping container are not an "integrated whole" because the evidence shows that two were not sold as a unit. Moreover, the container could logically be separated from the plywood and was in fact separated when the container was returned to Maersk and the plywood was sent to BlueLinx's customers.

Cook's arguments completely miss the point. The issue before the court is whether the shipping container and the plywood together are considered a product for the purposes of a products liability claim, not whether BlueLinx owned the property right to possess the plywood and the container. Cook cites to no evidence nor does he provide any argument as to how the plywood and shipping container were an integrated whole such that they could be considered together as a product. Moreover, BlueLinx's motion clearly applies to Cook's negligence claim because that claim is based on products

liability, and the evidence shows that the shipping container and plywood together are not a product. Bragg does stand for the proposition that failure to prove a products liability case under a strict liability theory does not preclude proving a products liability case under a negligence theory. 462 S.E.2d at 326. However, the issue warranting summary judgment in favor of BlueLinx is common to both the strict liability and negligence claims—the things upon which Cook bases his claims are not together a product. Because the plywood and the shipping container are not together a product, Cook's claims must fail.

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS** BlueLinx's motion for summary judgment.

**AND IT IS SO ORDERED.**

_/s/ signature_

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 27, 2020**
**Charleston, South Carolina**

7